# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL JUNIOR LESCALLETT, | 1:13-cv-01342-LJO-BAM (PC) |
| Plaintiff, | SCREENING ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | (ECF No. 9) |
| R. DIAZ, et al., | |
| Defendants. | THIRTY-DAY DEADLINE |

### I.   Screening Requirement and Standard

Plaintiff Darrell Junior Lescallett ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On June 16, 2014, the Court dismissed Plaintiff's complaint with leave to amend. Plaintiff's first amended complaint, filed on July 31, 2014, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at Kern Valley State Prison. The events alleged in the complaint occurred while Plaintiff was housed at Corcoran State Prison. Plaintiff names the following defendants:  (1) C. Gipson, Warden; (2) R. Broomfield, Captain; (3) B. D. Weaver, Lieutenant; (4) R. Juarez, Lieutenant; (5) J. Prudhel, Lieutenant; (6) R. McMurrey, Correctional Officer; and (6) Does 1-10, Correctional Personnel

Plaintiff alleges:

Claim 1:

On or about March 30, 2012, Plaintiff entered into a negotiated settlement with the CDCR in Liscallett v. McDonald, et al., 11-61 KJN.  The action involved Plaintiff being falsely labeled as a 2-5 gang affiliate and segregated by prison officials at High Desert State Prison.  At the time of the settlement, Plaintiff was confined at Corcoran State Prison.  Following the settlement, a number of correctional staff at Corcoran, including Defendant McMurrey, began

1  making comments to Plaintiff about "beating the system" and that they do it differently at
2  Corcoran.
3      On or about June 14, 2012, Defendants Gipson and Broomfield placed Facility 3B,
4  Buildings 1-5, on modified program due to an increase in inmate on inmate violence, along with
5  violence towards staff.  The modified program allowed for searching and interviews in an effort
6  to ascertain the cause of the increase in violence.
7      On or about June 26, 2012, Defendant Gipson and Broomfield created a list of identified
8  inmates, which included Plaintiff, who were alleged to have documented disruptive SNY gang
9  (2-5) activity.  Those identified inmates were singled out and all movement and privileges were
10 suspended, including visiting, dayroom, yard, canteen, packages and telephone calls.  This action
11 did not advance any legitimate penological goal as Plaintiff did not have any documented SNY
12 gang (2-5) activity.
13     On or about June 26, 2012, two unidentified inmates came to Plaintiff's cell door and
14 placed a "red tag" on the door.  These two inmates then informed Plaintiff that all identified 2-5
15 gang affiliates were on "modified program" per the orders of Defendants Gipson and
16 Bloomfield.  This action did not advance any legitimate penological goal as Plaintiff was not a 2-
17 5 gang affiliate and there was no documentation stating otherwise.
18     Shortly after the red tag was placed on Plaintiff's cell door, Defendant McMurrey began
19 passing out chronos stating why the red tagged inmates were on modified program.  As
20 Defendant McMurrey approached Plaintiff's cell, Plaintiff asked, "Where's mine?"  Defendant
21 McMurrey stated, "It was in your lawsuit."  Defendant McMurrey then began laughing and
22 walked away. (ECF No. 9, p. 6.)  Plaintiff was not given a lock-up order for the action taken
23 against him.
24     On June 27, 2012, Plaintiff filed a CDCR 22 Form (Inmate/Parolee Request for
25 Interview, Item or Service) to the Institution Gang Investigations ("I.G.I.") sergeant regarding
26 placement on modified program.  Plaintiff requested an interview to dispute the erroneous
27 identification as a 2-5 gang affiliate, had proof that he was not a gang affiliate and had just won a
28

1  court action for a previous illegal and erroneous labeling of Plaintiff as a 2-5 gang affiliate.  The
2  22 Form was picked up and signed by C/O R. Meraz.
3   On or about July 1, 2012, Plaintiff attempted to file a CDCR 22 Form to Defendant
4  Bloomfield concerning the placement on modified program.  Defendant McMurrey refused to
5  sign the form, stating that he does not sign them, 3rd watch does.  Shortly thereafter, Defendant
6  McMurrey approached Plaintiff's cell.  After repeatedly attempting to get Defendant McMurrey
7  to sign the 22 form, Defendant McMurrey walked away from Plaintiff's cell.  A few minutes
8  later, Defendant McMurrey returned to Plaintiff's cell and stated to Plaintiff, "The first chance I
9  get, I'm going to remove from the building."  At no time did Plaintiff threaten Defendant
10  McMurrey or was Plaintiff aware that Defendant McMurrey was going to make a false allegation
11  that Plaintiff had threatened him.
12   On or about July 1, 2012, Plaintiff filed a CDCR 22 Form to Defendant Bloomfield
13  regarding Plaintiff being placed on modified program for being falsely labeled a 2-5 gang
14  affiliate and not receiving a CDC 114-D lock up order for the actions taken against him.  The 22
15  Form was picked up and signed by C/O J. Vargas.
16   On or about July 1, 2012, Plaintiff also filed a CDCR 602 Inmate Appeal on his
17  placement on modified program and the violation of his rights.  The CDCR 602 was submitted to
18  the Appeals Coordinator via institutional mail.
19   On or about July 2, 2012, C/O D. Uribe came to Plaintiff's cell and informed Plaintiff
20  that he was there to escort Plaintiff to the program office.  Plaintiff asked why and C/O Uribe
21  said that he did not know.  Plaintiff was then searched and escorted to the program office.
22   Upon arrival at the program office, Plaintiff was escorted to Defendant Weaver's office.
23  Once in Defendant Weaver's office, Plaintiff was forced into a chair.  Defendant Weaver then
24  stated, "My officer tells me you're an asshole who likes to sue the state.  Well guess what?
25  Those few bucks you got from the state you can spend sitting in the hole."  Plaintiff asked, "Why
26  am I going to this hole.  I didn't do anything wrong."  Defendant Weaver then stated, "Oh, sure
27  you did.  You threatened an officer."  Then addressing the escort officer, Defendant Weaver
28

1  stated, "Take his ass to the hole." Plaintiff was then placed in administrative segregation. This
2  action did not advance a legitimate penological goal.
3        On or about July 3, 2012, Defendant Bloomfield conducted an administrative review of
4  Plaintiff's Ad-Seg placement. Plaintiff attempted to explain what happened to Defendant
5  Bloomfield. Defendant Bloomfield cut Plaintiff off and then stated, "Come on, Lescallett,
6  you've been around long enough to know how this works. You were the one that started the
7  paper war. Now you have deal with all of the consequences. You'll be seen by committee
8  within 10 days." Plaintiff was then escorted back to his cell. This action did not advance a
9  legitimate penological goal.
10       <u>Claim 2:</u>
11       On or about July 8, 2012, Plaintiff was issued a CDC 115 Rules Violation Report for the
12 specific act of "Threat Against Staff." The CDC 115 was authored by Defendant McMurrey,
13 reviewed and classified by Defendant Weaver, and the incident packet was reviewed and
14 approved by Defendants Gipson and Broomfield. Plaintiff was informed that the threat was
15 being referred to the District Attorney for felony prosecution. Plaintiff elected to postpone the
16 hearing pending the outcome of referral for prosecution.
17       On or about August 20, 2012, Plaintiff submitted a CDCR 22 Form revoking his
18 postponement of his disciplinary hearing and requesting that the hearing be held within 30 days.
19 This request was ignored.
20       On or about September 26, 2012, Plaintiff submitted a second CDCR 22 from revoking
21 his postponement of the disciplinary hearing and requesting that the hearing be held within 30
22 days. This request was ignored.
23       On or about September 27, 2012, Plaintiff was allowed to review his postponement.
24 Plaintiff contends that this should have precluded Defendant Juarez, the senior hearing officer,
25 from imposing certain dispositions, namely loss of credits.
26       On or about October 12, 2012, Plaintiff appeared before Defendant Juarez for a
27 disciplinary hearing on CDC 115 log for the specified act of "Threat Against Staff." Plaintiff
28 requested Defendant Juarez call several inmate witnesses on Plaintiff's behalf, but this request

was rejected. Plaintiff further requested that Defendant Juarez contact ISU Captain R. Whitfield concerning the completion of the "Threat Assessment," which Plaintiff was positive would show no threat was made to Defendant McMurrey. Defendant Juarez refused and stated, "Apparently you don't understand how this is going. I've already decided you are guilty. You'll get your final copy. Now take him back to his cell." Plaintiff was then returned to his Ad-Seg cell. Plaintiff alleges that Defendant Juarez did not afford him due process and that the disciplinary hearing was a sham.

On or about December 1, 2012, Plaintiff received his final copy of the disciplinary hearing. Defendant Juarez, within the finding, fabricated that Plaintiff did not request witnesses, undersood the findings reached, did not have any questions regarding the disciplinary process and understood his options and instructions.

On or about December 10, 2012, Plaintiff filed a CDCR 602 Inmate Appeal, which was denied through the third level.

Claim 3:

On or about December 3, 2012, a "Threat Assessment" was concluded regarding Plaintiff's alleged threat against Defendant McMurrey. It was determined that a threat assessment committee meeting would not be necessary. Per Defendant Gipson, upon completion of the disciplinary process, Plaintiff would be referred to UCC/ICC for appropriate program and housing needs and could be returned to Facility 3B. The threat assessment was conducted by ISU Captain R. Whitfield.

On or about December 6, 2012, Plaintiff appeared before ICC for program review. ICC concluded punishment for the rules violation had been served. Based on all information, ICC released Plaintiff to SNY Facility 3B orientation as there was no evidence of any security issues.

On or about December 23, 2012, Plaintiff was released to Facility 3B.

On or about December 23, 2012, Defendant McMurrey conspired with Defendants Prudhel, Weaver and Bloomfield to return Plaintiff to Administrative Segregation.

On or about December 23, 2012, Plaintiff was escorted to the program office and informed by Defendant Prudhel that he was being placed back in Ad-Seg because "Officer

McMurrey doesn't want you on this yard." Plaintiff was once again placed in Ad-Seg. (ECF No. 9, p. 14.)

On or about December 27, 2012, Plaintiff appeared before ICC and was informed that "it has been requested to refer this case to the CSR for transfer to an alternate institution because the staff member (McMurrey) does not feel safe with him (Lescallett) being at CSP-Corcoran. Furthermore, Inmate Lescallett has an enemy on Facility 3B and 3C at CSP-Corcoran. Retention in ASU is based on S's release to COR-IV 270 SNY at this time may present an immediate threat to the safety and security of self/others as well as the security of the institution." (ECF No. 9, p. 14.) It was then recommended to transfer Plaintiff to KVSP-IV 180 SNY. This is a higher level institution and such transfer placed Plaintiff's life in danger due to the false allegations that Plaintiff was a 2-5 gang affiliate. Further, Plaintiff's placement in Ad-Seg amounted to punishing him twice for the alleged threat against Defendant McMurrey and did not serve any penological goal. Plaintiff has subsequently been transferred to KVSP-IV 180 SNY in retaliation for his First Amendment activity.

Plaintiff's seeks declaratory relief, along with compensatory and punitive damages and expungement of the fabricated CDC 115.

### III. Deficiencies of Complaint

### A. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is

legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff fails to link the DOE defendants to any alleged constitutional violation. If Plaintiff elects to amend his complaint, he must allege what each defendant did (or did not do) that resulted in a violation of his rights.

**B. Doe Defendants**

As noted, Plaintiff has named Does 1 through 10. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

**C. Supervisory Liability**

To the extent Plaintiff seeks to bring suit against Defendant Warden Gipson based on the Warden's role as supervisor, he may not do so. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Moss, 711 F.3d at 967–68; Lacey v. Maricopa County, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff alleges that Defendant Warden Gipson created a list of identified inmates, including Plaintiff, who were alleged to have documented disruptive gang activity, and placed them on modified program.  However, Plaintiff has not alleged that Defendant Warden Gipson knew that Plaintiff was not a 2-5 gang affiliate.  Plaintiff also has not alleged that Defendant Warden Gipson was involved in any other constitutional deprivation or that Warden Gipson instituted a deficient policy that was the moving force of any constitutional violation.  Plaintiff will be given leave to cure these deficiencies to the extent that he can do so in good faith.

### D.  Gang Member Affiliation – Due Process and Eighth Amendment Claims

Plaintiff alleges that Defendant Warden Gipson and Defendant Broomfield erroneously included Plaintiff on a list of inmates alleged to have documented disruptive SNY gang (2-5) activity.   Placement on the list resulted in a loss of privileges and a modified program in June 2012.

Plaintiff has not alleged that his placement on modified program for a brief period of time enhanced his prison sentence in "such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," or imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Ghana v. Pearce, 159 F.3d 1206, 1209 (9th Cir.1998) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).  Nor has Plaintiff alleged that the modified program rose to the level of cruel and unusual punishment under the Eighth Amendment. See Wilson v. Seiter, 501 U.S. 294, 296–98, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (requiring deliberate indifference).  As a critical pleading deficiency, Plaintiff fails to allege that Defendants Gipson and Broomfield were aware that Plaintiff had been erroneously affiliated with 2-5 gang activity or that they were aware of any settlement of claims in a prior lawsuit concerning gang affiliation.

Plaintiff will be given leave to cure these deficiencies to the extent he is able to do so in good faith.

### E.  Heck Bar

As a general matter, state prisoners may not challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief.

9

Wilkinson v. Dotson, 544 U.S. 74, 78, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81 (emphasis in original). Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81–2. The favorable termination rule applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits. Edwards v. Balisok, 520 U.S. 641, 646–48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

Here, Plaintiff admits that he lost credits as a result of being found guilty of the CDC 115 Rule Violation Report authored by Defendant McMurrey for the specific act of "Threat Against Staff." Plaintiff is asserting the following claims related to the threat against Defendant McMurrey: (1) retaliation against Defendant Weaver based on Plaintiff's placement in administrative segregation for allegedly threatening Defendant McMurrey; (2) retaliation against Defendant McMurrey arising out of an allegedly false CDC 115 Rules Violation Report filed by Defendant McMurrey, which asserted that Plaintiff threatened him; (3) due process violations by Defendant Bloomfield and Juarez following the CDC 115 Rules Violation Report, including due process claims against Defendant Juarez resulting from the disciplinary hearing on the CDC 115; and (4) retaliation and due process claims against Defendants Prudhel, Weaver and Bloomfield for placement in administrative segregation and transfer to KVSP for the alleged threat against Defendant McMurrey.

Plaintiff's success in this action on his claims of retaliation arising out of the allegedly false CDC 115, his claims of due process violations arising out of the disciplinary proceedings, and his claims of retaliation arising out of his placement in Ad-Seg and his subsequent transfer to Kern Valley State Prison would necessarily invalidate the result of the disciplinary hearing,

which was based on finding that Plaintiff threated Defendant McMurrey.  As such, Plaintiff may not pursue these claims in this action unless he can demonstrate that his disciplinary conviction has been invalidated.  Heck, 512 U.S. at 489 (until and unless favorable termination of the conviction or sentence occurs prisoner has no cause of action under section 1983).

### F.  Declaratory Relief

Plaintiff seeks a declaration that his rights were violated.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that a defendant violated Plaintiff's rights is unnecessary.

### IV.   Conclusion and Order

Plaintiff's complaint fails to state a cognizable claim against any defendant.  The Court will grant Plaintiff a final opportunity to cure the identified deficiencies.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927. Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed with leave to amend;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint; and
4. <u>If Plaintiff fails to file a second amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order</u>.

IT IS SO ORDERED.

Dated: **October 17, 2014**          /s/ Barbara A. McAuliffe
                                      UNITED STATES MAGISTRATE JUDGE

12