1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL JUNIOR LESCALLETT, | ) 1:13-cv-01342-LJO-BAM (PC) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS |
| | ) REGARDING DISMISSAL OF CERTAIN |
| v. | ) CLAIMS AND DEFENDANTS |
| | ) (ECF Nos. 11, 12, 13) |
| R. DIAZ, et al., | ) |
| | ) FOURTEEN-DAY DEADLINE |
| Defendants. | ) |
| | ) |
| | ) |

**Findings and Recommendations following Screening**

**I.       Screening Requirement and Standard**

Plaintiff Darrell Junior Lescallett ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

On June 2, 2015, the Magistrate Judge screened Plaintiff's second amended complaint pursuant to 28 U.S.C. § 1915A, and found that it stated cognizable retaliation claim against Defendants Gipson, Bloomfield and Doe Defendants regarding his identification as a 2-5 gang affiliate and placement on a modified program, but failed to state any other cognizable claims. The Magistrate Judge therefore provided Plaintiff with an opportunity to file a third amended complaint or notify the Court whether he was agreeable to proceed only on the cognizable claim. (ECF No. 12.)

On June 22, 2015, Plaintiff notified the Court of his intention to proceed only on the cognizable claim.  (ECF No. 13.)  Accordingly, the Court issues the following Findings and Recommendations.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

///

///

## II.   **Plaintiff's Allegations**

Plaintiff is currently housed at Kern Valley State Prison.  The events alleged in the complaint occurred while Plaintiff was housed at Corcoran State Prison.  Plaintiff names the following defendants:  (1) C. Gipson, Warden; (2) R. Broomfield, Captain; (3) B. J. Weaver, Lieutenant; (4) R. Juarez, Lieutenant; (5) J. Prudhel, Lieutenant; (6) R. McMurrey, Correctional Officer; and (6) Does 1-10, Correctional Personnel

Plaintiff alleges:

Claim 1:

On or about March 30, 2012, Plaintiff entered into a negotiated settlement with the CDCR in Liscallett v. McDonald, et al., 11-61 KJN.  The action involved Plaintiff being falsely labeled as a 2-5 gang affiliate and segregated by prison officials at High Desert State Prison.  At the time of the settlement, Plaintiff was confined at Corcoran State Prison.  Following the settlement, a number of correctional staff at Corcoran, including Defendants Broomfield, Weaver and McMurrey, began making comments to Plaintiff about "beating the system" and that they do it differently at Corcoran.

On or about June 14, 2012, Defendants Gipson and Broomfield placed Facility 3B, Buildings 1-5, on modified program due to an increase in inmate on inmate violence, along with violence towards staff.  The modified program allowed for searching and interviews in an effort to ascertain the cause of the increase in violence.

On or about June 26, 2012, Defendant Gipson, Broomfield and Doe Defendants created a list of identified inmates, which included Plaintiff, who were alleged to have documented disruptive SNY gang (2-5) activity.  At this time, Defendants Gipson, Broomfield and Doe Defendants knew that Plaintiff had no documented SNY gang (2-5) activity and had just recently settled a previous civil suit proving he had no such affiliation.  Defendants Gipson, Broomfield and Doe Defendants placed Plaintiff on the list in retaliation for Plaintiff's previous civil suit. The identified inmates, including Plaintiff, were singled out and all movement and privileges were suspended, including visiting, dayroom, yard, canteen, packages and telephone calls.  This

action did not advance any legitimate penological goal as Plaintiff did not have any documented SNY gang (2-5) activity.

On or about June 26, 2012, two unidentified inmates came to Plaintiff's cell door and placed a "red tag" on the door.  These two inmates then informed Plaintiff that all identified 2-5 gang affiliates were on "modified program" per the orders of Defendants Gipson, Bloomfield and Doe Defendants.  Plaintiff alleges that Defendants' activities were done solely to retaliate against Plaintiff for his previous suit.  This action did not advance any legitimate penological goal as Plaintiff was not a 2-5 gang affiliate and there was no documentation stating otherwise.

Shortly after the red tag was placed on Plaintiff's cell door, Defendant McMurrey began passing out chronos stating why the red tagged inmates were on modified program.  As Defendant McMurrey approached Plaintiff's cell, Plaintiff asked, "Where's mine?"  Defendant McMurrey stated, "It was in your lawsuit."  Defendant McMurrey then began laughing and walked away.  (ECF No. 9, p. 6.)  Plaintiff was not given a lock-up order for the action taken against him by Defendants Gipson, Bloomfield, McMurrey and Doe Defendants.  Plaintiff alleges that this violated his due process rights and the California Code of Regulations.

On June 27, 2012, Plaintiff filed a CDCR 22 Form (Inmate/Parolee Request for Interview, Item or Service) to the Institution Gang Investigations ("I.G.I.") sergeant regarding placement on modified program.  Plaintiff requested an interview to dispute the erroneous identification as a 2-5 gang affiliate.  Plaintiff reported that he was not a gang affiliate, had proof that he was not a gang affiliate and had just won a court action for a previous illegal and erroneous labeling of Plaintiff as a 2-5 gang affiliate.  The 22 Form was picked up and signed by C/O R. Meraz.

On or about July 1, 2012, Plaintiff attempted to file a CDCR 22 Form to Defendant Bloomfield concerning the placement on modified program.  Defendant McMurrey refused to sign the form, stating that he does not sign them, 3rd watch does.  Shortly thereafter, Defendant McMurrey approached Plaintiff's cell.  After repeatedly attempting to get Defendant McMurrey to sign the 22 form, Defendant McMurrey walked away from Plaintiff's cell.  A few minutes later, Defendant McMurrey returned to Plaintiff's cell and stated to Plaintiff, "The first chance I

get, I'm going to remove you from the building." At no time did Plaintiff threaten Defendant McMurrey or was Plaintiff aware that Defendant McMurrey was going to make a false allegation that Plaintiff had threatened him.

On or about July 1, 2012, Plaintiff filed a CDCR 22 Form to Defendant Bloomfield regarding Plaintiff being placed on modified program for being falsely labeled a 2-5 gang affiliate and not receiving a CDC 114-D lock up order for the actions taken against him. The 22 Form was picked up and signed by C/O J. Vargas.

On or about July 1, 2012, Plaintiff also filed a CDCR 602 Inmate Appeal on his placement on modified program and the violation of his rights. The CDCR 602 was submitted to the Appeals Coordinator via institutional mail.

On or about July 2, 2012, Defendants Gipson, Bloomfield, Weaver, McMurrey and Doe Defendants, upon learning of Plaintiff's 602 appeal, conspired to falsely charge Plaintiff with threatening staff.

On the same date, Correctional Officer D. Uribe came to Plaintiff's cell and informed Plaintiff that he was there to escort Plaintiff to the program office. Plaintiff asked why and C/O Uribe said that he did not know. Plaintiff was then strip searched and escorted to the program office.

Upon arrival at the program office, Plaintiff was escorted to Defendant Weaver's office. Once in Defendant Weaver's office, Plaintiff was forced into a chair. Defendant Weaver then stated, "My officer tells me you're an asshole who likes to sue the state. Well guess what? Those few bucks you got from the state you can spend sitting in the hole." Plaintiff asked, "Why am I going to the hole. I didn't do anything wrong." Defendant Weaver then stated, "Oh, sure you did. You threatened an officer." Then addressing the escort officer, Defendant Weaver stated, "Take his ass to the hole." Plaintiff was then placed in administrative segregation. This action did not advance a legitimate penological goal.

On or about July 3, 2012, Defendant Bloomfield conducted an administrative review of Plaintiff's Ad-Seg placement. Plaintiff attempted to explain what happened to Defendant Bloomfield. Defendant Bloomfield cut Plaintiff off and then stated, "Come on, Lescallett,

you've been around long enough to know how this works.  You were the one that started the paper war.  Now you have deal with all of the consequences.  You'll be seen by committee within 10 days."  Plaintiff was then escorted back to his cell.  This action did not advance a legitimate penological goal.

On or about July 8, 2012, Plaintiff was issued a CDC 115 Rules Violation Report for the specific act of "Threat Against Staff."  The CDC 115 was authored by Defendant McMurrey, reviewed and classified by Defendant Weaver, and the incident packet was reviewed and approved by Defendants Gipson and Broomfield.

Claim 2:

On or about July 8, 2012, Plaintiff was issued a CDC 115 Rules Violation Report for the specific act of "Threat Against Staff."  Plaintiff was informed that the incident was being referred to the District Attorney for felony prosecution.  Plaintiff elected to postpone the hearing pending the outcome of referral for prosecution.

On or about August 20, 2012, Plaintiff submitted a CDCR 22 Form revoking his postponement of his disciplinary hearing and requesting that the hearing be held within 30 days.  This request was ignored.

On or about September 26, 2012, Plaintiff submitted a second CDCR 22 from revoking his postponement of the disciplinary hearing and requesting that the hearing be held within 30 days.  This request was ignored.

On or about September 27, 2012, Plaintiff was allowed to revoke his postponement.  As this was beyond 30 days from his original request, Plaintiff contends that this should have precluded Defendant Juarez, the senior hearing officer, from imposing certain dispositions, namely loss of credits.

On or about October 12, 2012, Plaintiff appeared before Defendant Juarez for a disciplinary hearing on CDC 115 log for the specified act of "Threat Against Staff."  Plaintiff requested Defendant Juarez call several inmate witnesses on Plaintiff's behalf, but this request was rejected.  Plaintiff further requested that Defendant Juarez contact ISU Captain R. Whitfield concerning the completion of the "Threat Assessment," which Plaintiff was positive would show

no threat was made to Defendant McMurrey.  Defendant Juarez refused and stated, "Apparently you don't understand how this is going.  I've already decided you are guilty.  You'll get your final copy.  Now take him back to his cell."  Plaintiff was then returned to his Ad-Seg cell. Plaintiff alleges that Defendant Juarez did not afford him due process and that the disciplinary hearing was a sham.

On or about December 1, 2012, Plaintiff received his final copy of the disciplinary hearing.  Defendant Juarez, within the finding, fabricated that Plaintiff did not request witnesses, understood the findings reached, did not have any questions regarding the disciplinary process and understood his options and instructions.

On or about December 10, 2012, Plaintiff filed a CDCR 602 Inmate Appeal, which was denied through the third level.

Claim 3:

On or about December 3, 2012, a "Threat Assessment" was concluded regarding Plaintiff's alleged threat against Defendant McMurrey.  It was determined that a threat assessment committee meeting would not be necessary.  Per Defendant Gipson, upon completion of the disciplinary process, Plaintiff would be referred to UCC/ICC for appropriate program and housing needs and could be returned to Facility 3B.  The threat assessment was conducted by ISU Captain R. Whitfield.

On or about December 6, 2012, Plaintiff appeared before ICC for program review.  ICC concluded punishment for the rules violation had been served.  Based on all information, ICC released Plaintiff to SNY Facility 3B orientation as there was no evidence of any security issues.

On or about December 23, 2012, Plaintiff was released to Facility 3B.

On or about December 23, 2012, Defendants Gipson, Bloomfield, Weaver, Prudhel, McMurrey and Doe Defendants conspired to return Plaintiff to Administrative Segregation as retaliation.

On or about December 23, 2012, Plaintiff was escorted to the program office and informed by Defendant Prudhel that he was being placed back in Ad-Seg because "Officer

McMurrey doesn't want you on this yard."  Plaintiff was once again placed in Ad-Seg.  (ECF No. 9, p. 14.)

On or about December 27, 2012, Plaintiff appeared before ICC and was informed that "it has been requested to refer this case to the CSR for transfer to an alternate institution because the staff member (McMurrey) does not feel safe with him (Lescallett) being at CSP-Corcoran. Furthermore, Inmate Lescallett has an enemy on Facility 3B and 3C at CSP-Corcoran.  Retention in ASU is based on S's release to COR-IV 270 SNY at this time may present an immediate threat to the safety and security of self/others as well as the security of the institution."  (ECF No. 9, p. 14.)  It was then recommended to transfer Plaintiff to KVSP-IV 180 SNY.  This is a higher level institution and such transfer placed Plaintiff's life in danger due to the false allegations that Plaintiff was a 2-5 gang affiliate.  Defendants Gipson, Bloomfield, Weaver, Prudhel, McMurrey and Doe Defendants knew Plaintiff's life would be endangered if transferred to KVSP-IV SNY. Plaintiff alleges that the recommendation was made with the intention that Plaintiff would be assaulted.  Further, Plaintiff alleges that his placement in Ad-Seg amounted to punishing him twice for the alleged threat against Defendant McMurrey and did not serve any penological goal. Plaintiff has subsequently been transferred to KVSP-IV 180 SNY in retaliation for his First Amendment activity.

Plaintiff's seeks compensatory and punitive damages, along with all references to 2-5 gang affiliation expunged from his record.

### III.   Discussion

### A.  Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation.  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

At the pleading stage, in Claim 1, Plaintiff has stated a cognizable retaliation claim against Defendants Gipson, Broomfield and Doe Defendants arising out of events on June 26, 2012, which resulted in Plaintiff's placement on a modified program.

In Claim 2, and as discussed below, Plaintiff may not pursue a retaliation claim arising out of his disciplinary proceedings.

In Claim 3, Plaintiff has not stated a cognizable claim of retaliation against Defendants Gipson, Bloomfield, Weaver, Prudhel, Weaver, McMurrey and Doe Defendants arising from his December 2012 placement in administrative segregation and subsequent transfer to KVSP for the alleged threat against Defendant McMurrey. Based on the allegations in the complaint, it is evident that prison officials had legitimate penological reasons supporting Plaintiff's return to Ad-Seg and subsequent transfer, including concerns for Plaintiff's safety from an enemy on Facility 3B and 3C at California State Prison, Corcoran. To maintain a viable claim of First Amendment retaliation, the prisoner must establish that the action of prison officials did not reasonably advance a legitimate correctional goal. Rhodes, 408 F.3d at 567-68.

### B. Gang Member Affiliation – Due Process and Eighth Amendment Claims

To the extent Plaintiff is attempting to pursue Due Process and Eighth Amendment claims arising out of his placement on a modified program, he has not stated a cognizable claim. Plaintiff has not alleged that his placement on modified program for a brief period of time enhanced his prison sentence in "such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," or imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Ghana v. Pearce, 159 F.3d 1206, 1209 (9th Cir.1998) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Nor has Plaintiff alleged that the modified program rose to the level of cruel and unusual punishment under the Eighth Amendment. See Wilson v. Seiter, 501 U.S. 294, 296–98, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (requiring deliberate indifference).

1

    **C.  <u>Heck</u> Bar**

2

    As a general matter, state prisoners may not challenge the fact or duration of their

3

confinement in a section 1983 action and their sole remedy lies in habeas corpus relief.

4

<u>Wilkinson v. Dotson</u>, 544 U.S. 74, 78, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). Often referred to

5

as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise

6

broad scope applies whenever state prisoners "seek to invalidate the duration of their

7

confinement-either directly through an injunction compelling speedier release or indirectly

8

through a judicial determination that necessarily implies the unlawfulness of the State's custody."

9

<u>Wilkinson</u>, 544 U.S. at 81 (emphasis in original). Accordingly, "a state prisoner's [section] 1983

10

action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable

11

relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal

12

prison proceedings)—if success in that action would necessarily demonstrate the invalidity of

13

confinement or its duration."  <u>Id.</u> at 81–2. The favorable termination rule applies to prison

14

disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior

15

credits. <u>Edwards v. Balisok</u>, 520 U.S. 641, 646–48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

16

    Here, Plaintiff admits that he lost credits as a result of being found guilty of the CDC 115

17

Rule Violation Report authored by Defendant McMurrey for the specific act of "Threat Against

18

Staff."  Plaintiff is asserting the following claims related to the threat against Defendant

19

McMurrey and his disciplinary proceedings:  (1) retaliation against Defendant Weaver based on

20

Plaintiff's placement in administrative segregation for allegedly threatening Defendant

21

McMurrey; (2) retaliation against Defendants Gipson, Bloomfield, Weaver, McMurrey and Doe

22

Defendants arising out of an allegedly false CDC 115 Rules Violation Report filed by Defendant

23

McMurrey, which asserted that Plaintiff threatened him; and (3) due process violations by

24

Defendant Bloomfield and Juarez following the CDC 115 Rules Violation Report, including due

25

process claims against Defendant Juarez resulting from the disciplinary hearing on the CDC 115.

26

    Plaintiff's success in this action on his claims of retaliation arising out of the allegedly

27

false CDC 115 and his claims of due process violations arising out of the disciplinary

28

proceedings would necessarily invalidate the result of the disciplinary hearing, which was based

on finding that Plaintiff threated Defendant McMurrey.  As such, Plaintiff may not pursue these claims in this action unless he can demonstrate that his disciplinary conviction has been invalidated.  Heck v. Humphrey, 512 U.S. 477, 489, 114 S.Ct. 2364, 2373 (1994) (until and unless favorable termination of the conviction or sentence occurs prisoner has no cause of action under section 1983).  Having been allowed an opportunity to amend, Plaintiff has not refuted that certain of his claims are barred by Heck.

### D.  Doe Defendants

Plaintiff has named Doe Defendants.  "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

### IV.     Conclusion and Recommendation

Plaintiff's second amended complaint states a cognizable retaliation claim against Defendants Gipson, Broomfield and Doe Defendants arising out of events on June 26, 2012, which resulted in Plaintiff's placement on a modified program, but fails to state any other cognizable claims.  The Court therefore recommends that Plaintiff's remaining claims and Defendants Weaver, Juarez, Prudhel, and McMurrey be dismissed from this action.  Plaintiff was provided with an opportunity to file a third amended complaint, but opted to proceed on the cognizable claims.  As such, the Court does not recommend granting further leave to amend.

Based on the foregoing, it is HEREBY RECOMMENDED as follows:

1.       This action proceed on Plaintiff's second amended complaint, filed on November 24, 2014, for  retaliation in violation of the First Amendment against Defendants Gipson, Broomfield and Doe Defendants arising out of events on June 26, 2012, which resulted in Plaintiff's placement on a modified program;

2.       Plaintiff's remaining claims be dismissed from this action, including Plaintiff's additional retaliation, Due Process and Eighth Amendment claims;

1      3.      Defendants Weaver, Juarez, Prudhel, and McMurrey be dismissed from this

2   action.

3          These Findings and Recommendations will be submitted to the United States District

4   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

5   fourteen (14) days after being served with these Findings and Recommendations, Plaintiff may

6   file written objections with the Court.  The document should be captioned "Objections to

7   Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

8   objections within the specified time may result in the waiver of the "right to challenge the

9   magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir.

10  2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

11

12  IT IS SO ORDERED.

13     Dated:   **June 26, 2015**                          /s/ Barbara A. McAuliffe

14                                                    UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28