# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL JUNIOR LESCALLETT, | Case No.  1:13-cv-01342-LJO-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| R. DIAZ, et al., | (ECF No. 28) |
| Defendants. | **Fourteen (14) Day Deadline** |

### Findings and Recommendations

### I.     Introduction

Plaintiff Darrell Junior Lescallett ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. This action proceeds against Defendants Gipson, Broomfield and Doe Defendants[1] for retaliation in violation of the First Amendment arising out of events on June 26, 2012, which resulted in Plaintiff's placement on a modified program.  (ECF No. 18.)

Currently before the Court is Defendants Gipson and Broomfield's motion for summary judgment, filed on May 17, 2016, pursuant to Federal Rule of Civil Procedure 56.[2]  (ECF No. 28.)

---

[1]     By separate order, the court will require Plaintiff to show cause why Doe Defendants should not be dismissed from this action for failure to identify them for service of process.

[2]     Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion

1

1    Plaintiff opposed the motion, and Defendants replied. (ECF Nos. 39, 40).  The motion is deemed

2    submitted. Local Rule 230(l).  Having considered the moving, opposition and reply papers, the

3    Court recommends that Defendant Gipson and Broomfield's motion for summary judgment be

4    granted.

5              **II.    Defendants' Motion for Summary Judgment**

6         Defendants Gipson and Broomfield argue that they are entitled to summary judgment on

7    Plaintiff's claim of retaliation because (1) Plaintiff has no evidence of a retaliatory motive on the

8    part of Defendants Gipson or Broomfield; and (2) Defendants' actions reasonably advanced

9    legitimate penological goals.

10             **A.    Undisputed Material Facts[3]**

11        1.    At all times relevant to this action, Plaintiff was housed at Corcoran State Prison

12   (COR) in Corcoran, California. (Amended Complaint, ECF No. 11 at 3.)

13        2.    At all times relevant to this action, Defendant Broomfield was employed as

14   Captain at COR. (ECF No. 11 at 3; Declaration of R. Broomfield ("Broomfield Decl.") at ¶ 1.)

15        3.    At all times relevant to this action, Defendant Gipson was employed as a Warden

16   at COR. (ECF No. 11 at 2.)

17        4.    On March 30, 2012, Plaintiff entered into a settlement with CDCR in a previous

18   civil case. (ECF No. 11 at 3.)

19        5.    Shortly after Plaintiff's settlement, a number of officers began making negative

20   comments to Plaintiff regarding his lawsuit. (ECF No. 11 at 4-5; Ex. A to Declaration of Lucas L.

21   Hennes, Deposition of Plaintiff ("Pl's Depo.") at 64:24 – 66:3.)

22        6.    Plaintiff never heard Defendant Broomfield or Defendant Gipson make any

23   negative comments regarding his settlement. (Pl's Depo. at 66:4-12.)

24        7.    On June 14, 2012, Defendants Broomfield and Gipson placed Facility 3B on

25   modified program due to an increase in inmate-on-inmate violence, as well as violence towards

26   for summary judgment.  (ECF No. 28-3.)  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154
     F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

27   [3]      These undisputed facts are derived from Defendants' Statement of Undisputed Facts and Plaintiff's
     Response to Defendants' Statement of Undisputed Facts.  (ECF Nos. 28-2 and 39 at 25-39.)  Unless otherwise
28   indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

staff. (ECF No. 11 at 5; Pl's Depo. at 66:13 – 67:19; Broomfield Decl. at ¶ 2.)

8.     On June 26, 2012, most of the inmates on Facility 3B were taken off modified program, but a specific group of inmates, including Plaintiff, was kept on modified program based on information that they were involved in the 2-5 gang. (ECF No. 11 at 5; Pl's Depo. at 70:3-7, 72:12-15; Broomfield Decl. at ¶ 4.)

Plaintiff admits that this action was taken against him, but not that he has any affiliation with the 2-5. (ECF No. 39 at 26.)   Plaintiff's denial of any affiliation is immaterial to whether there was documentation in his central file that he was involved in the 2-5 gang or the underlying reason for Plaintiff's retention on modified program.

9.     Plaintiff's retention on modified program on June 26, 2012 was based on documentation in his central file which indicated that he was identified as a member or associate of the disruptive group "2-5" and placed on lockdown status while housed at High Desert State Prison in 2010. (Broomfield Decl. at ¶ 5.)

Plaintiff attempts to raise a genuine dispute of material fact by first arguing that the documentation in his central file does not meet CDCR's legal standards in Title 15 of the California Code of Regulations.  (ECF No. 39 at p. 26.)  This argument is not persuasive and fails to raise a genuine issue for trial.  The purported failure of the documentation to comply with relevant prison regulations is immaterial to the issue of whether Plaintiff was retained on modified program based on information contained in this documentation.

Plaintiff next argues that Defendants used this documentation knowing that it was previously ruled invalid by his prior lawsuit, *Lescallett v. McDonald, et al.*, Case No. 2:11-cv-00061-KJM-CKD, which involved allegations that he was falsely labeled as a 2-5 gang affiliate. (ECF No. 39 at 26; ECF No. 39, Declaration of Darrell J. Lescallett ¶ 3; ECF No. 11 at 3.)  In evaluating this argument, the court takes judicial notice of court records in *Lescallett v. McDonald, et al.,* Case No. 2:11-cv-00061-KJM-CKD. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of its own records in other cases). According to those records, the court did not issue a ruling or any other order invalidating documentation in Plaintiff's central file indicating that he was identified as a member or associate

of disruptive group 2-5. *Lescallett v. McDonald*, *et al*., Case No. 2:11-cv-00061-KJM-CKD. Instead, the record reflects that the parties reached a settlement of the action prior to any dispositive ruling. *Id.* at ECF No. 29. Furthermore, pursuant to the terms of the settlement, CDCR was obligated only to pay Plaintiff a monetary amount. Aside from this payment, CDCR was not required to take any other actions and admitted no liability. *Id.* at ECF No. 33-1. As no court order, stipulation or other agreement invalidated documentation in Plaintiff's central file, he has failed to raise a genuine issue for trial.

10. On July 2, 2012, Plaintiff was placed in administrative segregation for threatening staff. (Pl's Depo. at 74:4 – 75:7.)

Plaintiff admits that he was placed in administrative segregation, but contends that he did not commit the underlying act. (ECF No. 39 at 27.) Plaintiff has failed to raise a genuine dispute of material fact. Plaintiff admits that he was placed in administrative segregation on July 2, 2012, which ended his placement on a modified program, based on allegation that he threatened staff. *Id.*

11. On July 8, 2012, Plaintiff received a rules violation report for threatening staff, and he was later found guilty of that rules violation report. (ECF No. 11 at 12, 14; Pl's Depo. at 75:20 – 76:1.)

Plaintiff admits that he was found guilty of the alleged action, but contends that he did not commit this act. (ECF No. 39 at 27.) Plaintiff has failed to raise a genuine dispute of material fact. Plaintiff has admitted that he was found guilty of the rules violation report.

12. Because of his placement in administrative segregation, Plaintiff was effectively on modified program between June 26, 2012 and July 2, 2012. (Pl's Depo. at 77:14-17.)

Plaintiff attempts to argue that this is a distinction without a difference and it does not change the fact that he was (and continues to be) erroneously placed on modified/lockdown programs. Plaintiff has failed to raise a genuine dispute of material fact. Plaintiff does not deny that he was placed in administrative segregation and was no longer on a modified program following that placement.

///

4

1       **B.**     **Legal Standard**

2       Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

3 and any affidavits provided establish that "there is no genuine dispute as to any material fact and

4 the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is

5 one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty*

6 *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

7 reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

8       The party seeking summary judgment "always bears the initial responsibility of informing

9 the district court of the basis for its motion, and identifying those portions of the pleadings,

10 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

11 which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

12 *Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies

13 depending on whether the issue on which summary judgment is sought is one in which the

14 movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty*

15 *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at

16 trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

17 the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will

18 have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

19 absence of evidence to support the nonmoving party's case." *Id.*

20       If the movant satisfies its initial burden, the nonmoving party must go beyond the

21 allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

22 evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th

23 Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice

24 in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475

25 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its

26 opponent must do more than simply show that there is some metaphysical doubt as to the material

27 facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of

28 fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S.

at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## C.   Discussion

Within the prison context, "[a] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). However, the court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." *Pratt*, 65 F.3d at 808.

### A.  Adverse Action Because of Protected Conduct

As an initial matter, Plaintiff must show that Defendants took an adverse action against

1    him because of his protected conduct. *See Rhodes*, 408 F.3d at 567. To prove this, Plaintiff must

2    show that his protected conduct was "the 'substantial' or 'motivating' factor behind the

3    [Defendants'] conduct." *Brodheim*, 584 F.3d at 1271 (citing *Soranno's Gasco, Inc. v. Morgan*,

4    874 F.2d 1310, 1314 (9th Cir. 1989)). On summary judgment, Plaintiff must "put forth evidence

5    of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of

6    material fact as to [Defendants'] intent" in taking the alleged adverse action. *Bruce*, 351 F.3d at

7    1288.

8       In this case, Plaintiff has alleged that Defendants Gipson and Broomfield placed him on a

9    modified program in retaliation for his prior lawsuit and settlement. However, Plaintiff has failed

10   to present a genuine dispute of material fact that Defendants Gipson and Broomfield acted with a

11   retaliatory motive or that his lawsuit/settlement was the motivating factor behind his brief

12   placement on a modified program.

13       With respect to Defendant Gipson, Plaintiff concedes in his opposition that he has no

14   evidence as to the liability of this defendant. (ECF No. 39 at 3.) For this reason alone, the Court

15   finds that Defendant Gipson is entitled to summary judgment. Even without this concession from

16   Plaintiff, however, he has admitted he had no proof that Defendants Gipson and Broomfield

17   wanted to retaliate against him. (Pl's Depo. at 86:15-87:15; 92:2-96:8.) Plaintiff also admitted

18   that he only named Defendants Gipson and Broomfield in his lawsuit because they were in charge

19   and "responsible for everything that happens on the facility." (Pl's Depo. 81:10-15; 83:11-17;

20   96:6-12.)

21       Further, although Plaintiff alleged that a number of officers made negative comments to

22   him about the lawsuit, it is undisputed that Plaintiff never heard Defendants Gipson or

23   Broomfield make any negative comments regarding the settlement. UMF 5, 6. It is also

24   undisputed that Plaintiff was retained on modified program due to documentation of a previous

25   gang affiliation in his central file. UMF 9. To the extent Plaintiff challenges that documentation

26   as erroneous, this is not sufficient to raise a genuine issue regarding retaliatory motive. That the

27   documentation in Plaintiff's central file may have contained erroneous information is not relevant

28   to Defendants' purported reliance on that information. Plaintiff has not presented any evidence

1    from which it can be inferred that Defendants Gipson and Broomfield knowingly relied on

2    erroneous information.

3          Plaintiff argues that he put Defendant Broomfield on notice about his erroneous placement

4    by submitting a CDCR Form 22 Request for Interview to Defendant Broomfield that expressed

5    his erroneous placement on the modified/lockdown program, but Defendant Broomfield failed to

6    respond.  (ECF No. 39 at 3-4 and Ex. A.)  That Plaintiff may have sent a CDCR Form 22 request

7    to Defendant Broomfield regarding his allegedly erroneous placement is not sufficient to raise a

8    genuine dispute of material fact regarding a retaliatory motive.  It is undisputed that Plaintiff was

9    placed on modified program because of documentation in his central file that indicated he was

10   identified as a member or associate of the disruptive group 2-5, and not for any other purpose.

11   UMF 9.  Moreover, the CDCR Form 22 alleging an erroneous placement was sent to Defendant

12   Broomfield by U.S. Mail on July 19, 2012, which was well after Plaintiff was removed from a

13   modified program and put into administrative segregation on July 2, 2012.  (*Id.*); UMF 10, 12.

14   Therefore, it cannot reasonably be inferred that Defendant Broomfield knew of any alleged errors

15   in Plaintiff's central file documentation during Plaintiff's time on modified program between

16   June 26, 2012, and July 2, 2012.  UMF 12.

17         Plaintiff next argues that because Defendants Gipson and Broomfield admit that other

18   officers were verbally abusive as a result of his settlement, their "motive was that Plaintiff

19   exercised his right to access the court."  (ECF No. 39 at 4.)   As Plaintiff correctly notes,

20   Defendants Gipson and Broomfield do not dispute that other officers made negative comments to

21   him regarding his settlement.  UMF 5.  However, this is not sufficient to impute a motive to

22   Defendants Gipson and Broomfield for Plaintiff's placement on modified program.   It is

23   undisputed that Plaintiff never heard Defendants Gipson or Broomfield make any negative

24   comments regarding his settlement.  UMF 6.  It also is undisputed that Plaintiff retention on

25   modified program on June 26, 2012 was based on documentation in his central file which

26   indicated that he was identified as a member or associate of the disruptive group "2-5" and placed

27   on lockdown status while housed at High Desert State Prison in 2010. UMF 9.

28         Plaintiff's remaining arguments regarding his placement in administrative segregation and

1   the rules violation report for allegedly threatening staff are irrelevant to whether Defendants

2   Gipson and Broomfield acted with retaliatory motive with respect to the modified program

3   placement.

4        For these reasons, the court finds that a reasonable jury could not conclude that

5   Defendants Gipson and Broomfield placed Plaintiff on a modified program in retaliation for his

6   prior lawsuit and settlement, and that summary judgment should be granted.  Although the court

7   finds summary judgment appropriate on this basis, it will nonetheless briefly address the issue of

8   whether Defendants' actions advanced a legitimate penological goal.

9                    **B.  Legitimate Penological Goal**

10       Plaintiff "bears the burden of pleading and proving the absence of legitimate correctional

11   goals for the conduct of which he complains." *Pratt*, 65 F.3d 806.  "To ensure that courts afford

12   appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional

13   rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to

14   alleged infringements of fundamental constitutional rights."  *O'Lone v. Estate of Shabazz*, 482

15   U.S. 342, 349 (1997). Under this standard, "when a prison regulation impinges on inmates'

16   constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

17   interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). First, "there must be a valid, rational

18   connection between the prison regulation and the legitimate government interest put forward to

19   justify it," and "the governmental objective must be a legitimate and neutral one." *Id.* A second

20   consideration is "whether there are alternative means of exercising the right that remain open to

21   prison inmates." *Id.* at 90 (internal quotations and citation omitted).  A third consideration is "the

22   impact accommodation of the asserted constitutional right will have on guards and other inmates,

23   and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives

24   is evidence of the reasonableness of a prison regulation." *Id.* Plaintiff must also "overcome the

25   presumption that prison officials acted within their broad discretion." *Shaw v. Murphy*, 532 U.S.

26   223, 232 (2001) (citation omitted).

27       Defendants argue that the relevant factors show their "purported actions—keeping

28   inmates with suspected gang times on modified program during an investigation—were

9

1    reasonably related to the legitimate correctional goal of protecting inmates and staff from

2    increased levels of violence." (ECF No. 28-1 at 6.)  The Court agrees.

3         As indicated by the Ninth Circuit, prison officials have a duty to keep inmates safe, while

4    balancing that duty against other obligations imposed by law.  *See Norwood v. Vance*, 591 F.3d

5    1062, 1069 (9th Cir. 2010) (citation omitted).  Here, it is undisputed that Facility 3B was placed

6    on modified program due to an increase in inmate-on-inmate violence, as well as violence

7    towards staff.   UMF 7.  The modified program was implemented to allow for searching and

8    interviews in an effort to ascertain the cause of the increase in violence.  (Broomfield Decl. at ¶

9    2.)  After several interviews were conducted, it was determined that gang activity was greatly

10   contributing to the violence on Facility 3B, and a specific group of inmates, including Plaintiff,

11   was kept on modified program based on information that they were involved in the 2-5 gang.

12   UMF 8-9; (Broomfield Decl. at ¶ 4.)  The modified plan successfully brought each building back

13   to normal programming with minimal violence.  (Broomfield Decl. at ¶ 6.)

14        In his opposition, Plaintiff appears to concede that Defendants have a legitimate

15   penological goal in maintaining the order, security and safety of their institutions.  (ECF No. 39 at

16   p. 5.)  However, Plaintiff asserts that there is no legitimate penological goal in verbally abusing

17   him, locking him in his cell and denying him his rights without following CDCR administrative

18   regulations, failing to adhere to a court settlement and confiscating his personal property and legal

19   paperwork.  (ECF No. 39 at 5.)   As a practical matter, Plaintiff has not raised a genuine issue for

20   trial regarding the legitimate penological goal of maintaining order, security and safety.   As

21   discussed above, Plaintiff was placed on modified program based on documentation in his central

22   file that indicated he was identified as a member or associate of the disruptive group 2-5.  UMF 9.

23   Neither his settlement nor any court rulings have invalidated the substance of that documentation.

24   Finally, to the extent Plaintiff complains about verbal abuse and confiscation of his personal and

25   legal property, Plaintiff has not provided any evidence to establish that Defendant Gipson or

26   Defendant Broomfield engaged in any such abuse or confiscated any of his property.

27   ///

28   ///

10

1

**C.      Conclusion and Recommendations**

2      Based on the foregoing, IT IS HEREBY RECOMMENDED that:

3      1.  Defendants' motion for summary judgment, filed on May 17, 2016, be GRANTED;

4      and

5      2.  Judgment be entered in favor of Defendants Gipson and Broomfield.

6      These Findings and Recommendations will be submitted to the United States District

7 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within

8 **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

9 file written objections with the Court.   The document should be captioned "Objections to

10 Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file

11 objections within the specified time may result in the waiver of the "right to challenge the

12 magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

13 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

14

15 IT IS SO ORDERED.

16   Dated:   __**March 10, 2017**__              ___/s/ *Barbara A. McAuliffe*___

17                                                            UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28